IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KRISTINA L. RICHTERS                                                                                      PLAINTIFF

vs.                                            Civil No. 05-3042

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                                          DEFENDANT

## MEMORANDUM OPINION

### Factual and Procedural Background:

Kristina L. Richters (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claims for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, and for supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI, *42 U.S.C. § 1381a*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

Plaintiff's complaint was filed on August 10, 2005, nunc pro tunc to August 8, 2005 (Doc. #1). The Commissioner filed her answer and the transcript of the administrative record on November 9, 2005 (Doc. #6). On November 16, 2005, a scheduling letter was docketed advising the parties of the due dates of their appeal briefs, if any (Doc. #7). The Plaintiff's appeal brief, if any, was to be filed of record no later than 30 days after the date the answer and transcript were filed, i.e. December 9, 2005. The Commissioner was then given 30 days to respond, i.e., January 8, 2006.

Although there has been ample time to do so, no brief has been filed on behalf of Plaintiff. However, the Commissioner filed an appeal brief on January 3, 2006 (Doc. #8). The history of the administrative proceedings is contained in the Commissioner's appeal brief (Doc. #8, pp. 1-2), and will not be recited herein, except as is necessary.

The DIB and SSI applications now before the undersigned were filed on July 29, 2003 (T. 47-49, 302-304). Each application alleged an onset date of July 9, 2003 (T. 47, 302). The relevant time period for Plaintiff's claim for DIB benefits begins with the alleged onset date, July 9, 2003, and ends on December 29, 2004, the date of the ALJ's decision (T. 47, 15-16). In order to receive DIB, an applicant has to establish that she was disabled before the expiration of her insured status. *42 U.S.C. §§ 416(i), 423(i); Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir.1990); Pryor v. Heckler, 737 F.2d 1488 (8th Cir.1984).* Here, Plaintiff was insured through the date of the ALJ's decision. For purposes of SSI, the relevant time period begins with the date plaintiff filed her application for SSI benefits, July 29, 2003, and ends with the date of the ALJ's decision, December 29, 2004 (T. 302, 10-16). SSI benefits are not payable for a period prior to the application. *Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir.1989).*

Plaintiff alleges that she is disabled at age 33 (T. 320) due to: pain; history of traumatic injury to the left knee; post closed head injury, times two; post surgical knee replacement, along with ten or more other knee surgeries; muscle spasms; limp; speech impediment; history of sexual abuse; depression; loss of concentration; anger control problems; learning disability; 5th grade reading level; numbness; and, borderline intellectual functioning (hereinafter "BIF"). The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

AO72A
(Rev. 8/82)

The Plaintiff's administrative hearing was held on September 27, 2004 (T. 317-369), after which the ALJ issued his written decision, dated December 29, 2004 (T. 10-16). On July 5, 2005, the Appeals Council denied Plaintiff's request for review (T. 2-4), thereby making the decision of the ALJ the final decision of the Commissioner. From that decision, Plaintiff appeals.

**Relevant Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.; Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).* Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).*

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b).* If the claimant is so involved, benefits are denied; if

not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*. The technique is known as the psychiatric review technique (hereinafter "PRT").

**Discussion:**

A thorough review of the record indicates that the ALJ failed to properly consider all the relevant medical evidence with regard to Plaintiff's mental complaints. Specifically, the ALJ mentioned, but failed to properly analyze Plaintiff's borderline intellectual functioning (BIF). The ALJ stated:

> The medical evidence indicates that the claimant has left knee injury and borderline intellectual functioning, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination[,] to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(T. 11).

The ALJ's decision is devoid of any substantive analysis of Plaintiff's severe impairment of BIF (T. 10-16).

However, at hearing, an interesting exchange took place after the ALJ expressed his concerns about the regularity with which Dr. Vann Smith renders opinions that Plaintiff's are disabled.

> ALJ: Well, even if he finds depression, he gives her a GAF of 65 which are moderate limitations.
>
> ATTY: Judge, that - - and I have taken the deposition of Dr. Smith a number of times. He tells us that the GAF of 65, that most [inaudible] people know about is the GAF of a DSM-IV [phonetic], and that is a psychological, a psychologist mental problem type thing. He is a - - he's looking at the GAF that neuropsychologists use, organic difficulties, and it is different. It's a different GAF than a psychologist uses.
>
> ALJ: Sounds to me like it's two different drummers. Those are DSM-IV things, and if he doesn't go by the DSM-IV I can't rely on him anyway.

ATTY: Well, the DSM-IV has to do with mental depression.

> ALJ: He's a psychologist isn't he?

ATTY: Yes, sir. He's a neuropsychologist. Perhaps if I sent you a copy of a deposition that he did and - -
ALJ: No.

ATTY: - - explained that that would help.

ALJ: A deposition is someone explaining that he does is mainstream - -

ATTY: It is mainstream with neuropsychologists.

ALJ: Well, I've never gotten a report showing organic brain syndrome caused by pain. It's caused by other things. And I'm not going to argue it with you, it's just that every one of his basically read the same on every report I've seen with him, and he comes up with the same diagnosis each time. Now, you may have some that you don't submit when it doesn't come up with that diagnosis, or you may not send some to him. I don't know what you do.

ATTY: No sir. I - -

ALJ: But he says, basically, he's got - - it's almost from a template.

ATTY: Well, I can tell you that a deposition was - - a lot of that is understood, and I invite you to subpoena him and ask him that very questions (sic) because he makes a very credible witness. He really does, and he explains that. Like you said at the last deposition we took of him Friday, there's no other way to say the things I say, except to say it the way I say it. I mean, if  - - you either do or you do not have this problem. You either do or do not have that problem. And as to pain, he indicates that everyone knows that emorphins [phonetic], and various things in the body are all messed up when a person has chronic pain. They don't have enough emorphins and other types of chemicals to help the brain to function like it normally does when you have chronic pain. So - - but, again, we're getting into expertise that I certainly don't understand completely, and as I say, I have every confidence that if - -

ALJ: Well - -

ATTY: - - if you subpoena him, he can do, he can explain any of these things.

ALJ: Well, where you, or he kind of got [inaudible] was what you just said. He give (sic) a GAF. He gives diagnosis (sic), but it's not a DSM3, or DSM-IV diagnosis, and his GAF is not a DSM GAF. You know, he's reading a different book.

-6-

ATTY: The DSM-IV diagnoses are taken from the original Bible used by psychologists. DSM-IV is relatively new on the scene.
ALJ: And psychiatrists.

ATTY: And so what he uses is that ICM [phonetic] or whatever it is, the designations that are used in insurance, by insurance companies and have been forever, and a book, the treatise that I mean, I - - I mean, there's one neuropsychologist between Jonesboro and Fayetteville, and Little Rock, and in my area. Didn't use him at all until about four, five years ago and used to use another doctor. And, I'm always accused of the doctors that I use are always - -

ALJ: Yeah.

ATTY: - - the same. But I'm just saying, you know, if you have any questions about him, subpoena him here. He'll explain that he's not just sending you a template. He types his own reports himself. But at the same time, I just would indicate that if you don't believe him, then I would suggest that perhaps someone else who is a neuropsychologist, there are a number of them around the state that could dispute him and show that he's all wet, and I, to this point, have - - for instance, Dr. Johnson [phonetic] is a neuropsychologist over in Jonesboro. Every time I've ever sent a patient over there, like in a real major personal injury case, he always confirms what Dr. Smith has done. And, in some cases, in one personal injury case I just settled for $415,000, says it's worse than Dr. Smith says it was - -

ALJ: Okay.

ATTY: - - so I'm just pointing out that these are things that are certainly there.

ALJ: Okay. Let me ask the vocational expert some questions.

ATTY: Sure.

(T. 351-355).

The ALJ addressed Dr. Smith's findings within his decision. With respect to the consultative neuropsychological evaluation of Plaintiff by Dr. Vann A. Smith, the ALJ stated:

> The claimant underwent a Neuropsychological Evaluation on March 10, 2004. Dr. Vann A. Smith administered the testing. The claimant reported two closed head injuries, the first when she was less than 5 years old, when her mother allegedly pushed her down some stairs. The second incident occurred while

-7-

riding a bicycle she was hit by a car. In the later, the claimant sustained trauma to her left knee resulting in multiple surgical repair attempts and chronic pain. Although the claimant stated that knee pain awakens her from sleep frequently and markedly restricts her mobility, she reported she was not taking any medications. Mental status evaluation revealed the claimant was mildly anxious, but essentially appropriate to circumstance. She voiced no suicidal or homicidal ideation, and her intelligence was estimated to lie within the normal range. Dr. Smith diagnosed the claimant with organic brain dysfunction, secondary to TBI; cognitive dysfunction, non-psychotic, secondary to OBS; organic affective syndrome; TBI with Grade II and III concussion, by history; orthopedic trauma secondary to bicycle accident; [and,] chronic pain syndrome. Her current GAF was 65.

(T. 12-13).

Despite the previously mentioned exchange at the administrative hearing, the ALJ wrote that although he "respects Dr. Smith's opinion as a physician", he "disagre[ed] with his statement that Plaintiff was disabled" (T. 13).

Additionally, with regard to step four of the sequential analysis, the ALJ stated:

The impartial vocational expert testified that based upon the claimant's residual functional capacity for sedentary exertional activity, the claimant could return to her past relevant work as an animal shelter clerk. The vocational expert testified that there were no conflicts between the occupational evidence that she provided and information in the *Dictionary of Occupational Titles* (DOT), including it's companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), published by the Department of Labor (see Social Security Ruling 00-4p).

(T. 14).

Despite his finding that Plaintiff has BIF, a severe impairment, he failed to include any mention of what, if any affect, said BIF would have on Plaintiff's RFC. The only limitations noted in the hypothetical question were the ability to: lift/carry "ten pounds occasionally and five pounds frequently"; "push and pull" ten pounds occasionally and five pounds frequently; "stand and walk for up to two hours of an eight hour workday"; "sit for up to six hours of an

AO72A
(Rev. 8/82)

eight hour work day"; "frequently balance and stoop"; "only occasionally" (1/3 of the time), climb stairs, but no ladders or scaffolds; and, occasionally kneel and crouch but "cannot crawl" (T. 358-359). It was the VE's response to the hypothetical question containing only the above described physical limitations that the ALJ relied upon at step 4 of the sequential analysis (T. 358-359, 14). This is of particular note, in light of the ALJ's finding that Plaintiff's BIF is a severe impairment, as well as the numerous references to the issue of Plaintiff's BIF within the record. For example, Plaintiff alleged and her education records (T. 108-226), indicate that she had a "learning disability" and was placed in remedial classes due to same (T. 123, 92, 131, 140, 108-226).

Although she completed high school, Plaintiff alleged, and the educational records confirm, that she had only a limited ability to read and write. Specifically, she reads at the 4th or 5th grade reading level (T. 122, 123, 133, 188). Plaintiff's educational records also include the following information from Plaintiff's educational, psychiatric and speech therapy providers: notations from her resource room teacher; borderline IQ scores; grades; remedial course enrollment; notations of Plaintiff's need for continual repetition and reinforcement; recommendations that Plaintiff be placed in resource teaching programs; individual education plans for Plaintiff's education from year to year; special education programs and goals of same for Plaintiff; speech therapy treatment records; plaintiff's percentile ranking of 13 which places her in the below average range of language function; inability to answer questions when she must make a conclusion; poor social skills; difficulty with writing skills; being a hard worker, despite her limitations; poor reading comprehension skills; processing difficulties; and, deficiencies in the areas of math, reading and written expression (T. 119, 122, 123, 127, 130,

AO72A
(Rev. 8/82)

132, 133, 171, 175). Despite the wide variety of medical and psychological evidence within Plaintiff's educational records, the ALJ failed to discuss Plaintiff's educational records within his decision. No part of the ALJ's analysis of Plaintiff's decidedly severe impairment of BIF was devoted to the educational records which support this diagnosis.

Likewise, the ALJ failed to discuss the issue of BIF when he questioned the vocational expert (VE) (T. 356-368). As noted above, the ALJ relied on the testimony of the VE in determining that Plaintiff could return to her past relevant work as an animal shelter clerk (T. 14). However, the question posed to the VE, which resulted in the VE's testimony that Plaintiff could return to said past relevant work, did not include any mention of Plaintiff's BIF, reading level or learning disability. It is well settled that a hypothetical question posed to a vocational expert must fully set forth a claimant's impairments. *E.g., Totz v. Sullivan, 961 F.2d 727, 730 (8th Cir.1992)*. "Questions posed to a vocational expert should 'precisely set out the claimant's particular physical and mental impairments'." *Ledoux v. Schweiker, 732 F.2d 1385, 1388 (8th Cir. 1984)(citation omitted)*. The testimony of a VE in response to a hypothetical question which does not precisely stat to the expert the claimant's condition cannot be accepted as substantial evidence. *Douglas v. Bowen, 836 F.2d 392 (8th Cir.1987)*.

According to section V62.89, BIF is defined as an IQ ranging between 71 to 84. See American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders,* p. 740 (4th Edition, Text Revision 2000). The ALJ failed to fully and fairly consider and analyze Plaintiff's BIF. Moreover, he failed to discuss the other evidence of record, particularly that as to Plaintiff's reading level, educational history and learning disability. Said evidence is of particular importance when the Plaintiff's overall reading level and educational level is

-10-

considered in combination with her IQ, which is in the BIF range, and with her severe physical impairment of her knee. It is well settled that case law indicates that BIF should be considered a severe impairment. *Hunt v. Massanari, 250 F3d 622, 625 (8th Cir. 2001); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997)*. However, the ALJ's mere statement that Plaintiff's BIF is a severe impairment is not sufficient consideration without further analysis.

After careful consideration of the above record evidence, we question the ALJ's failure to consider what, if any, impact Plaintiff's severe impairments of BIF had on her residual functional capacity. "Although a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case", *see Senne v. Apfel, 198 F. 3d 1065, 1067 (8th Cir. 1999),* the ALJ is not free to ignore medical evidence, but rather must consider the whole record." *Reeder v. Apfel, 214 F. 3d 984, 988 (8th Cir. 2000)*. In the case at bar, the ALJ's complete disregard for the medical evidence submitted relative to Plaintiff's reading level, learning disability and BIF was not harmless error. Plaintiff alleged disability due, in part, to conditions of learning disability/BIF from the onset of the application process. This issue is not new, and cannot properly be ignored. Clearly, the ALJ failed to consider the entire record before him. The decision indicates the ALJ failed to adequately or properly consider either plaintiff's allegations, or the medical evidence pertaining to his BIF, and/or related issues, and thus failed to present a proper hypothetical question to the VE. Additionally, the undersigned also finds it noteworthy that the VE's testimony relied upon by the ALJ was based upon a hypothetical person who could only perform a limited range of sedentary work (T. 358). Yet, the ALJ failed to mention the impact of BIF on Plaintiff's RFC. The ALJ's reliance on the VE's testimony does not correspond with his findings of record.

-11-

Hence, this matter must be reversed and remanded for consideration of the entire record.

Upon remand, the Court suggests that the Commissioner also consider and analyze the issue of Plaintiff's alleged lack of financial means with which to obtain treatment and/or medication. There are numerous allegations of lack of financial means within the record, yet the ALJ failed to address this issue (T. 330, 336, 89, 90). This issue may or may not impact upon Plaintiff's treatment frequency, but upon remand, the issue should be addressed by the parties. In order to discredit a Plaintiff's subjective complaints, an alleged lack of funds should be considered in order to properly consider the weight to allot any lack of treatment and/or medication.

**Conclusion:**

For the foregoing reasons, we conclude that the decision of the ALJ should be reversed. The matter should be remanded for consideration of the evidence of Plaintiff's alleged difficulties with reading and writing, in conjunction with BIF, and consideration of her alleged lack of financial means. In light of the Court's decision to remand, the other issues raised by Plaintiff are not reached.

ENTERED this 21st day of September, 2006.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)